1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11
12
13
14
15
16
17

| | |
|---|---|
| BRIGHTON COLLECTIBLES, INC., a California corporation,<br><br>                                Plaintiff,<br><br>        vs.<br><br>RENAISSANCE GROUP INTERNATIONAL, a New Jersey company; RALPHS GROCERY COMPANY, an Ohio corporation,<br><br>                                Defendants. | CASE NO. 06-CV-1115 H (POR)<br><br>**ORDER RE MOTIONS IN LIMINE** |

18
19
20
21
22

On May 12, 2008, the Court held a hearing on the parties' motions in limine.  Peter W. Ross and Steven W. Winton appeared for plaintiff Brighton Collectibles, Inc.  Christopher R. Ball and Colin T. Kemp represented defendant Ralphs Grocery Company.  After considering the briefing by both parties and the arguments presented by counsel at the hearing, the Court summarizes its rulings on the parties' motions in limine as follows:

23

**Plaintiff's Motions in Limine**

24
25
26
27
28

1.     Plaintiff's first motion in limine seeks exclusion of any argument or evidence related to intellectual property infringement allegations and/or lawsuits brought against Plaintiff by parties not involved in this case.  (Doc. No. 176.)  The Court denies the motion, without prejudice to Plaintiff's ability to contemporaneously object at trial to the admissibility of such evidence.

1    2.    Plaintiff's second motion in limine seeks exclusion of evidence relating to any

2  Brighton product other than those identified by Plaintiff as exhibiting the trade dress asserted

3  by Plaintiff in this case.  (Doc. No. 177.)  Plaintiff contends that a trade dress plaintiff may

4  define its product line however it chooses, and therefore that evidence of other products is

5  inadmissible under Rules 402 and 403 of the Federal Rules of Evidence.  Defendant responds

6  that it should be permitted to put on evidence regarding what constitutes the "Brighton line"

7  of products, since such evidence is relevant to whether Plaintiff possesses a distinctive trade

8  dress.  Defendant also contends that evidence regarding other products made by Plaintiff is

9  relevant to whether Plaintiff's asserted trade dress has "secondary meaning."

10    The Court denies Plaintiff's motion.  To establish a protectable trade dress, Plaintiff

11  bears the burden of establishing that the products it asserts against Defendant have acquired

12  "secondary meaning."  Wal-Mart v. Samara, 529 U.S. 205, 216 (2000).  Secondary meaning

13  exists when, "in the minds of the public, the primary significant of a [trade dress] is to identify

14  the source of the product rather than the product itself."  Id. at 211.  The Ninth Circuit defines

15  secondary meaning as "the mental association by a substantial segment of consumers and

16  potential consumers between the alleged mark and a single source of the product."  Levi

17  Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985).

18    "Secondary meaning can be established in many ways, including (but not limited to)

19  direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a [trade

20  dress]; amount and manner of advertising; amount of sales and number of customers;

21  established place in the market; and proof of intentional copying by the defendant."  Filipino

22  Yellow Pages, Inc. v. Asian Journal Publications, Inc., 198 F.3d 1143, 1151 (9th Cir. 1999).

23  Advertising activities, however, "must involve 'image advertising,' that is the ads must feature

24  in some way the trade dress itself.  Otherwise, even evidence of extensive advertising or other

25  promotional efforts would not necessarily indicate that prospective buyers would associate the

26  trade dress with a particular source."  First Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378,

27  1383 (9th Cir. 1987).

28    The Court concludes that evidence regarding products other than those Plaintiff has

identified as bearing the trade dress at issue is relevant to Plaintiff's "manner of advertising," which in turn bears relevance to whether Plaintiff's asserted products have acquired secondary meaning.  See Filipino Yellow Pages, 198 F.3d at 1151.  The Court concludes that, although Plaintiff is free to define whichever products it chooses as bearing the asserted trade dress, so too is Defendant entitled to present evidence related to other products made by Plaintiff insofar as that evidence is relevant to whether Plaintiff has advertised its trade dress in a manner that has caused it to achieve secondary meaning.  Accordingly, the Court denies Plaintiff's motion in limine to exclude such evidence.  Plaintiff may object at trial to the admissibility of evidence regarding products not bearing Plaintiff's asserted trade dress.

3.      Plaintiff's third motion in limine requests exclusion of all evidence relating to Brighton's yearly revenues or net worth, pursuant to Rules 402 and 403 of the Federal Rules of Evidence.  (Doc. No. 178.)  Defendant responds that Plaintiff has put its revenues at issue by asserting a claim for approximately $2.5 million in harm to its goodwill.  (See Doc. No. 188.)

The Court concludes that evidence of Brighton's yearly revenues is relevant to Plaintiff's claim for lost goodwill.  Accordingly, the Court denies Plaintiff's motion on Rule 402 grounds.  The Court also declines at this time to exclude the evidence under Rule 403. Plaintiff may object at trial to the admissibility of this evidence.

4.      Defendant does not oppose Plaintiff's fourth motion in limine, regarding evidence of settlement discussions.  (Doc. Nos. 179, 190.)  The Court therefore grants that motion.

5.      Plaintiff's fifth motion in limine[1] seeks exclusion at trial of any argument that insufficient evidence exists regarding actual consumer confusion.  (Doc. No. 180.)  Plaintiff contends that it was denied access to the names and contact information of consumers who purchased from Defendant's stores the Langdon Leather products at issue.  During discovery Plaintiff requested that Defendant produce the identities of such consumers.  When Defendant

---

[1]      Defendant does not oppose Plaintiff's fourth motion in limine, regarding evidence of settlement discussions.  (See Doc. No. 190.)  The Court therefore grants that motion.

refused, Plaintiff filed a motion to compel Defendant to produce the information. (See Doc. No. 101.) On June 20, 2007, the magistrate judge issued an order denying Plaintiff's motion to compel. (Doc. No. 111.) The magistrate judge concluded that "Ralphs' need to protect the information sought outweighs Brighton's need to know at this juncture in the litigation." The magistrate judge's ruling was "without prejudice to Brighton renewing its request at a time when the requisite need may be shown." (Id.) On August 9, 2007, the Court affirmed the magistrate judge's ruling. (Doc. No. 133.) Subsequently, Plaintiff has not attempted to narrow or renew its request for this information.

The Court denies Plaintiff's motion to exclude argument that insufficient evidence exists regarding actual consumer confusion. Plaintiff bears the burden of persuasion on all elements of its trade dress claim, including "that there is a likelihood that the public will be confused by the infringing use." Stephen W. Boney, Inc. v. Boney Services, Inc., 127 F.3d 821, 828 (9th Cir. 1997). The jury may consider all factors the Ninth Circuit has stated are relevant to likelihood of confusion, including whether evidence exists regarding actual confusion. See AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979). The Court declines to prohibit Defendant from presenting argument regarding the sufficiency of Plaintiff's evidence. Plaintiff may object at trial, however, if Defendant presents arguments that are likely to unduly prejudice Plaintiff or mislead the jury. The Court denies Plaintiff's fifth motion in limine.

6.      Plaintiff's sixth motion in limine seeks exclusion of all evidence regarding prior attempts by Brighton to register Brighton's "Dangling Heart" trademark or any other trademark, as well as evidence about the alleged reasoning behind the United States Patent and Trademark Office decision to grant Plaintiff's application. (Doc. No. 181.) Defendant's pretrial memorandum of contentions of fact and law references Brighton's prior unsuccessful attempts to register what is now its Dangling Heart trademark and statements made by the USPTO in connection with those unsuccessful attempts. Plaintiff argues for exclusion under Rules 402, 403 and 801 of the Federal Rules of Evidence.

The Court concludes that the evidence at issue is relevant to the strength of Plaintiff's

trademark and falls within an exception to the hearsay rule.  See Fed. R. Evid. 803(8) ("[r]ecords, reports, statements . . . in any form, of public offices or agencies setting forth . . . (B) matters observed pursuant to duty imposed by law . . . or factual findings resulting from an investigation").  Additionally, the Court declines at this time to exclude the evidence on Rule 403 grounds.  Therefore, the Court denies Plaintiff's motion, without prejudice to Plaintiff's ability to raise contemporaneous objections at trial.

**Defendant's Motions in Limine**

1.      Defendant's fourth motion in limine[2] asks the Court to preclude Laura Young, one of Plaintiff's employees, from offering testimony as a so-called percipient expert.  (Doc. No. 166.)

In its expert witness designation, Plaintiff designated Dr. David Stewart, a professor of marketing, to provide expert analysis and testimony on surveys conducted regarding the public perception of Brighton's products and/or the likelihood that consumers will confuse Renaissance's goods with Brighton's goods.  Defendant deposed Dr. Stewart regarding his conclusions on whether consumers were likely to be confused by the sale of Langdon Leather products.

Plaintiff also designated Laura Young, Brighton's president of marketing and sales, as a percipient expert witness to offer testimony regarding consumers' perceptions of Brighton's products, whether consumers are likely to be confused by Defendant's sales of infringing products, and how Brighton's reputation and goodwill are harmed by Defendant's sale of allegedly infringing products.

The Court grants Defendant's motion to exclude expert testimony except for testimony as a percipient witness.  As the proponent of Ms. Young's expert testimony, Plaintiff bears the burden of establishing its admissibility.  See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993).  Expert testimony must be (1) "based on sufficient facts or data," (2) "the product of reliable principles and methods," and (3) applied "reliably" to the facts of

---

[2]      Plaintiff has filed statements of non-opposition regarding Defendant's motions in limine numbers 1, 2, 3 and 9.  (Doc. Nos. 195, 199.)  The Court therefore grants those motions by Defendant.

the case.  See Fed. R. Evid. 702.  The Court concludes that Plaintiff fails to establish that Ms. Young is qualified to testify as an expert regarding likelihood of confusion.  Ms. Young may possess many years' experience as Brighton's president of marketing, but Plaintiff fails to establish that Ms. Young has "knowledge, skill, experience, training, or education" sufficient to qualify her to offer expert testimony regarding consumer perception or the likelihood of confusion between Plaintiff's and Defendant's products.  As Defendant points out, the first time Ms. Young saw a Renaissance bag was on September 13, 2007, when she was deposed by Defendant.  (See Young Depo. at 200:13-19.)  The Court also concludes that Plaintiff fails to establish Ms. Young's qualification to offer opinion testimony regarding how Defendant's sale of allegedly infringing products has impacted Plaintiff's goodwill and reputation. Accordingly, the Court grants Defendant's motion to exclude the expert opinion testimony of Laura Young, but will permit her to testify as a percipient witness.

2.      Defendant's fifth motion in limine seeks to preclude Plaintiff from presenting the expert opinion testimony of Dr. David Stewart, a professor of marketing, who proposes to testify that Brighton lost one customer transaction for each sale by Defendant of an allegedly infringing product.  Defendant also seeks to exclude the testimony of Plaintiff's damages expert, Dr. Robert Wunderlich, who arrived at his damages calculation by using Dr. Stewart's conclusion that Plaintiff lost one customer transaction for each sale by Defendant.

Under Daubert, "[e]xpert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable."  Elsayed Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1063-64 (9th Cir. 2002).  The Court concludes that Plaintiff has failed to establish that Dr. Stewart's testimony regarding lost sales satisfies this standard.  Plaintiff fails to demonstrate that Dr. Stewart's opinion is "based on sufficient facts or data" or that it is "the product of reliable principles and methods" that have been applied "reliably" to the facts of this case.  See Fed. R. Evid. 702.  The Court concludes that the challenged portion of Dr. Stewart's proposed testimony is too speculative to merit admission as expert opinion that can "assist the trier of fact to understand the evidence or to determine a fact in issue."  Id.  Accordingly, the Court grants Defendant's motion to preclude Plaintiff from presenting expert testimony that Plaintiff

lost one customer transaction for each Langdon Leather product sold by Defendant. The Court declines to exclude Dr. Stewart's testimony in its entirety, and Defendant may make a contemporaneous objection to his testimony.

Although Defendant contends that the exclusion of Dr. Stewart's testimony regarding lost sales renders inadmissible the testimony of Dr. Wunderlich, Plaintiff's damages expert, the Court disagrees. Subject to contemporaneous objection at trial, the Court will permit Plaintiff to present Dr. Wunderlich's testimony regarding the amount of Plaintiff's damages assuming that Plaintiff lost one transaction per item sold by Defendant if Plaintiff offers evidence of Defendant's sales of the allegedly infringing items. The parties may argue to the jury the issue of what represents a proper method of calculating Plaintiff's damages.

3.     The Langdon Leather products at issue in this case were sold by Defendant between June and August 2005, and again between April 19 and May 17, 2006. Defendant's sixth motion in limine seeks exclusion of testimony by Plaintiff's expert witness regarding damages resulting from the sales that occurred in 2005. (Doc. No. 169.)

Dr. Robert Wunderlich, an expert witness retained by Plaintiff to testify regarding Plaintiff's alleged damages, produced his initial expert report on September 17, 2007. (See Decl. of Christopher R. Ball ISO Ralphs' In Limine Motion No. 6 ("Ball Decl."), Ex. D.) That report set forth Dr. Wunderlich's opinions regarding alleged lost profits and harm to goodwill resulting from Defendant's 2006 sales. Dr. Wunderlich noted that Renaissance began selling Langdon Leather products to Ralphs in 2005, but stated, "[a]s of the date of this report, I am not aware of records of these sales." (Ball Decl., Ex. D at 4 n.2.) Dr. Wunderlich stated that he "may revise [his] analysis as appropriate should [he] become aware of additional sales of the product at issue." (Id.)

On November 14, 2007, Dr. Wunderlich revised his report but did not offer any opinions regarding alleged damages from Defendant's 2005 sales. (See Ball Decl. ¶ 7.) At his November 14, 2007, deposition, Dr. Wunderlich produced to Plaintiff a supplement to his expert report, which modified certain of his opinions regarding damages stemming from 2006 sales. (Ball Decl., Ex. E.) On November 28, 2007, Plaintiff sent to Defendant's counsel a

proposed trial exhibit described by Plaintiff as "supplemental calculations performed by Dr. Wunderlich regarding Ralphs' Langdon Leather sales in 2005." Ball Decl., Ex. F.)  Defendant contends that Dr. Wunderlich should be prohibited from offering testimony regarding damages allegedly resulting from 2005 sales because Plaintiff failed to timely disclose Dr. Wunderlich's opinions and conclusions regarding that issue.

Pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, a retained expert must timely disclose a written report containing "a complete statement of all opinions to be expressed and the reasons therefore."  "[A]ny additions or changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due."  Fed. R. Civ. P. 26(e).  Pursuant to the Court's July 10, 2007, scheduling order, the parties' Rule 26(a)(3) disclosures were due by November 19, 2007.  (Doc. No. 115.)  The Court concludes that Plaintiff failed to timely disclose Dr. Wunderlich's opinions regarding damages allegedly resulting from the 2005 sales.

Rule 37(c)(1) of the Federal Rules of Civil Procedure states, "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed."  See also Yeti By Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001) (evidence precluded unless failure to comply with disclosure requirements was either substantially justified or harmless).  Plaintiff contends that it was substantially justified in disclosing Dr. Wunderlich's updated damages calculations for the first time in November 2007 because Defendant delayed producing sales figures related to the 2005 sales.  Plaintiff argues, alternatively, that Defendant cannot demonstrate that it suffered prejudice by any failure by Plaintiff to timely disclose Dr. Wunderlich's opinions, because Dr. Wunderlich's supplemental disclosure merely applied, to newly received data, a methodology which Plaintiff already had disclosed to Defendant.  (See Doc. No. 182.)

The Court declines at this time to completely exclude the challenged testimony of Dr. Wunderlich.  Both parties have arguments in favor of their position regarding who bears

responsibility for Dr. Wunderlich's supplemental disclosure after the close of expert discovery, and the law favors trial on the merits.  Cf. Computer Task Group, Inc. v. Brotby, 364 F.3d 1112, 1115 (9th Cir. 2004).  In light of all the circumstances of this case, the Court concludes that it is appropriate to permit renewed expert discovery limited to Dr. Wunderlich's conclusions based on sales that occurred in 2005.  Defendant may depose Dr. Wunderlich regarding his supplemental disclosure and, if desired, Defendant's expert may offer a brief rebuttal report.  The Court will permit Plaintiff to briefly depose Defendant's expert regarding any rebuttal report.  The parties should attempt to meet and confer to determine whether and to what extent such renewed discovery is necessary.  In the event the parties cannot reach an agreement, the Court will refer the parties to the magistrate judge to determine the appropriate extent (if any) of renewed expert discovery and whether any cost-shifting measures and/or sanctions are appropriate.  In light of the above discussion, the Court denies without prejudice Defendant's sixth motion in limine.

4.    Defendant's seventh motion in limine seeks to preclude Plaintiff from calling as a witness Debby Shelly, a store clerk in a Ralphs grocery store located in Garden Grove, California.  (Doc. No. 171.)  Ms. Shelly worked at that store in April and May of 2006, when Ralphs engaged in a four week program selling Langdon Leather products.  On May 23, 2006, Ms. Shelly used her personal computer to visit the website of Renaissance Group International, the New Jersey wholesaler that manufactured the Langdon Leather products sold by Ralphs.  She clicked on a "contact us" link and sent an e-mail stating, "I wanted to know if you are affiliated with Brighton . . . because your Langdon, Scandia and Tasket line look so much like the name brands."  (See Ball Decl., Ex. A.)

When Renaissance Group filed for bankruptcy in May of 2007, counsel for the bankruptcy trustee produced documents including Ms. Shelly's May 23, 2006 e-mail.  (Ball Decl. ¶¶ 3, 6.)  Discovery closed on November 16, 2007, without Plaintiff having deposed Ms. Shelly or identified her on its disclosures.  On November 19, 2007, the parties exchanged and filed their witness and exhibits lists.  (Id. ¶ 5.)  Plaintiff did not list Ms. Shelly as one of its witnesses.  (Id.)  The Court held a pretrial conference on December 10, 2007, and entered the

1   pretrial order in this matter on December 12, 2007.  (See Doc. No. 157.)  Ms. Shelly was not

2   listed as one of Plaintiff's witnesses.

3         On December 26, 2007, Plaintiff indicated Ms. Shelly's May 23, 2006, e-mail as an

4   addition to its list of trial exhibits.  (Ball Decl. ¶ 6.)  On January 3, 2008, Plaintiff requested

5   a deposition of Ms. Shelly.  (See Decl. of Keith J. Wesley, Ex. D.)  That deposition took place

6   on March 4, 2008.  On March 21, 2008, Brighton amended its witness list to include Ms.

7   Shelly.

8         Defendant contends that Ms. Shelly should be precluded from testifying because

9   Plaintiff failed to timely disclose her as a witness.  Plaintiff responds that, since Ms. Shelly is

10  a Ralphs employee with relevant information, she should have been disclosed by Ralphs.

11        The Court concludes that any failure by Plaintiff to timely disclose Ms. Shelly as a

12  witness was substantially justified and, even if it was not, that under all the circumstances of

13  this case Plaintiff's late disclosure was harmless.  Defendant has been able to depose Ms.

14  Shelly, who is one of Defendant's own employees, well in advance of trial.  Accordingly, the

15  Court denies Defendant's motion to preclude Ms. Shelly from testifying at trial.

16        5.        Finally, Defendant's eighth motion in limine seeks to exclude evidence of

17  Ralphs' profits or financial condition unless the jury returns a verdict for Plaintiff awarding

18  actual damages and finding that Ralphs is guilty of malice, oppression or fraud.  (Doc. No.

19  173.)  The Court grants Defendant's motion.  If the evidence supports Plaintiff's request,

20  Plaintiff may ask the jury to find malice, oppression, fraud or other prerequisite on a special

21  verdict for a finding of punitive damages, and the Court will bifurcate any financial

22  information or finding of punitive damages until the jury makes the appropriate threshold

23  determination for punitive damages.

24  ///

25  ///

26  ///

27  ///

28  ///

The Court sets this matter for trial on September 23, 2008 at 9:00 a.m.  The Court schedules a status conference for September 22, 2008 at 10:30 a.m.  If the parties wish to utilize a jury questionnaire, the parties should submit a joint proposed questionnaire no later than August 1, 2008.  The parties shall serve, file and exchange trial preparation materials not less than seven calendar days prior to the date for trial, pursuant to Local Civil Rule 16.1(f)(9).

IT IS SO ORDERED.

DATED:  May 13, 2008

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

CC: Magistrate Judge Louisa S. Porter